IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| CLARA JACQUELINE HANDY            ) | |
|                          ) | |
| Plaintiff,              ) | |
|                          ) | |
| v.                         ) | Civil Action No. TMD 11-1317M |
|                          ) | |
|                          ) | |
| MICHAEL J. ASTRUE,            ) | |
| Commissioner of Social Security,   ) | |
|                          ) | |
| Defendant.               ) | |

MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>MOTION FOR REMAND</u>

Clara Jacqueline Handy ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and Title XVI and of the Social Security Act, 42 U.S.C.§§ 401-433, 1381-83(c). Before the Court are Plaintiff's Motion for Summary Judgment (or Remand) (Pl.'s Mot. Summ., ECF No. 11), Defendant's Motion for Summary Judgment (Def.'s Mot. Summ., ECF No. 13) and Plaintiff's Response thereto (Pl's Resp., ECF No. 14). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Plaintiff's Motion for Remand is GRANTED.

I. <u>Procedural History</u>

Plaintiff filed her applications for DIB and SSI on December 13, 2007 alleging disability since July 25, 2007 on the basis of bipolar disorder with severe psychotic features, diabetes,

breast cancer, and high blood pressure. R. at 13, 207. Her claims were denied initially and on reconsideration. R. at 88-100. A hearing was held on July 14, 2009 at which Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. R. at 29-64. On September 22, 2009, the administrative law judge ("ALJ") issued a decision denying Plaintiff's claims for benefits. R. at 12-28. The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review. R. at 1-3.

## II.  ALJ's Decision

The ALJ evaluated Plaintiff's claim for DIB and SSI using the sequential processes set forth in 20 C.F.R. § 404.1520 and § 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: depression, bipolar disorder and obesity. At step three, the ALJ found that her impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that, given her Residual Functional Capacity ("RFC") Plaintiff was incapable of performing her past relevant work. At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national economy. Accordingly, she concluded that Claimant was not disabled. R. at 12-28.

## III.  Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995);

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id*.

## IV. Discussion

Plaintiff argues that the ALJ (1) erred in finding Plaintiff's depression and bipolar disorder did not meet Listing 12.04C (20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04C); and (2) erred in her RFC assessment.

    A.    <u>12.04C</u>

Plaintiff challenges the ALJ's finding that her mental impairments did not meet or equal the criteria of paragraph C in Listing 12.04.  Specifically she argues that while the ALJ found that she did not meet 12.04C1, she failed to consider whether she met subsections 2 or 3.  Under Listing 12.04, a claimant must have an affective disorder that meets the requirements set forth in sections A and B or section C.   Under section C, a claimant must have a:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with

3

symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

   1. Repeated episodes of decompensation, each of extended duration; **or**

   2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; **or**

   3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04C (emphasis added).

The ALJ implicitly acknowledged that Plaintiff has a medically documented history of a chronic affective disorder of at least two years' duration, but the ALJ did not find that the criteria set forth in sections C1–3 had been satisfied based upon the evidence. R. at 21. With specific respect to section C1, the ALJ noted that Plaintiff had no repeated episodes of decompensation. R. at 21. With respect to sections C2 and C3, the ALJ stated that there was no evidence that minimal increases in mental demands or a change in the environment would cause her to decompensate (C2) or that she has the inability to function outside a highly supportive living arrangement (C3). R. at 21.

When there is "ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments," the ALJ must identify the relevant impairment or impairments in the LOI and "compare each of the listed criteria to the evidence of the claimant's symptoms." *Ketcher v. Apfel,* 68 F.Supp.2d 629, 645–47 (D.Md.1999) (citing *Cook v. Heckler,* 783 F.2d 1168 (4th Cir.1986)); Here, the ALJ found that Plaintiff did not meet the criteria in both sections C2 and C3. Plaintiff cites a variety of

evidence in the record which she argues supports a finding that she meets both sections C2 and C3.[1]  While mindful of the deferential standard afforded to ALJs and the fact that it cannot reweigh the evidence, the Court cannot find that the ALJ's analysis of Section C3 is supported by substantial evidence.  As discussed below, the Court finds that the limited analysis that the ALJ performed with respect to this section did not rise to the level contemplated by *Cook*, or was otherwise flawed.

Throughout the opinion, the ALJ discusses Plaintiff's mental impairments and her stay at Go-Getters , a mental health organization which provides support and assistance to people recovering from severe mental illnesses.  R. at 286.  While it is undisputed that Plaintiff has lived within this environment since November 14, 2007, R. at 286, the ALJ specifically stated

> While the claimant may feel that she requires a structured environment like Go-Getters so she can function, the record as a whole reveals that the claimant is living there because she cannot afford housing elsewhere.

R. at 23. First, the Court agrees with Plaintiff that this conclusion misconstrues the evidence.  At the hearing, Plaintiff testified that she went into a group home because her psychiatrist recommended it "because they didn't feel [she] could live alone and take care, and function."  R. at 50.  While she also testified that she has to live in a group home because she cannot afford to live anywhere else, R. at 50, the ALJ does not explain why she fully credits this statement and effectively ignores the former.  Additionally, while the ALJ noted that Plaintiff may have considered moving out of Go-Getters, R. at 23, this is hardly relevant since the actual

---

[1] Plaintiff focuses, as will the Court, on Section C3 of the Listing.

issue is whether Plaintiff can actually function outside of that living arrangement; not whether she desired to do so. Moreover, the Court cannot find that substantial evidence supports the ALJ's finding that Plaintiff did not experience difficulty engaging in work activities while residing there. R. at 23. In fact, Melanie Craig, Community Support Advocate, indicated that Claimant sometimes forgets to take her medication leading to periods of mental decompensation, she became manic during the Spring of 2009, experienced increased irritability, decreased concentration, diminished impulses and behavior control and some disorganized thinking. R. at 287. Ms. Craig opined that Claimant would indefinitely require the support services of an organization such as Go-Getters and that she is unable to independently recognize and address the early signs of the periods of decompensation. R. at 287. Relying on SSR 06-03p, the ALJ assigned Ms. Craig's opinion little weight as she does not have credentials in the medical field and her observations were just those of a lay person. R. at 26. While this may be accurate and the ALJ is entitled to afford less weight to her ultimate *opinion*, that does not mean her actual firsthand observations of Claimant are similarly entitled to little weight. SSR 06-03p states:

> "Non-medical sources" who have had contact with the individual
> in their professional capacity, such as teachers, school counselors,
> and social welfare agency personnel who are not health care
> providers, are also valuable sources of evidence for assessing
> impairment severity and functioning. Often, these sources have
> close contact with the individuals and have personal knowledge
> and expertise to make judgments about their impairment(s),
> activities, and level of functioning over a period of time.

Moreover, the Court agrees with Plaintiff that the ALJ's analysis of her living situation

is fundamentally flawed.  A review of the ALJ's decision confirms that she primarily relied upon Claimant's monitored treatment and living situation at Go-Getters in determining that she was stable and her condition improving. Listing 12.00F states in pertinent part:

> Effects of structured settings. Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed on you. With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized.
>
> At the same time, however, your ability to function outside of such a structured or supportive setting may not have changed. If your symptomatology is controlled or attenuated by psychosocial factors, we must consider your ability to function outside of such highly structured settings. For these reasons, identical paragraph C criteria are included in 12.02, 12.03, and 12.04.

Listing 12.00(F).  Accordingly, the ALJ must consider a claimant's ability to function outside of a highly structured setting since structured settings may reduce the mental demands placed upon a claimant, which may cause a minimization of overt symptoms and signs of the underlying mental disorder.  It does not appear that the ALJ considered Plaintiff's ability to function outside of this structured setting where, for example, she receives help in complying with the taking of her medications.  R. at 287.  To the extent that the ALJ did find Plaintiff stable while at Go-Getters, she failed to even consider if her stability was precisely due to the fact that she lived in such a structured environment.  The Court agrees with Plaintiff that the ALJ's citation to the various activities of daily living she could perform, *see, e.g* .R. at 21

(keeping her room clean, making her bed, doing the laundry) is misplaced given her failure to acknowledge that they were, in fact, performed within the confines of her living arrangement. The Court remands the matter for further consideration of Listing 12.04C.

Since the Court remands the instant case for further evaluation and reconsideration at Step 3, the Court will not address Plaintiff's RFC arguments as it may be impacted by the ALJ's Step 3 reconsideration on remand.

V.  Conclusion

Based on the foregoing, Plaintiff's Motion for Remand is GRANTED.  A separate order shall issue.


Date: May 4, 2012                            _____/s/_____
                                             THOMAS M. DIGIROLAMO
                                             United States Magistrate Judge

Copies to:
Anthony Mignini
Mignini & Raab, LLP
2015 Emmorton Rd., Suite 202
Bel Air, MD 21015


Allen F. Loucks
Assistant United States Attorney
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692

8